IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARBARA EVANS,** | : | No. 3:04cv0439 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **LOWE'S HOME CENTERS, INC.,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

In the instant employment discrimination case, Plaintiff Barbara Evans ("plaintiff") alleges that while she was an employee of Defendant Lowe's Home Centers, Inc., ("defendant"), she was subjected to sex discrimination and was ultimately terminated in retaliation for complaining of the discrimination. Before the court for disposition are the following motions filed by the defendant: a motion for summary judgment; a motion to strike plaintiff's counterstatement of material facts; and a motion to strike affidavits. The motions are fully briefed and ripe for disposition.

**Background**

Defendant, a home improvement retailer, employed plaintiff at its Dickson City, Pennsylvania Store (hereinafter "Scranton store") from October 1995 until February 6, 2003. Initially hired as a cashier, she also served as a Customer Service Associate and as a Department Manager in the hardware department and paint department. Her final position was that of Price Auditor. (Pl. Dep. at 132). Plaintiff is in her mid-fifties and lives in Clarks Summit, Pennsylvania. (Pl. Dep. at 12, 15). She maintained a satisfactory employment record for the nine years that she worked at the Scranton store, and other than the events described below, her disciplinary record consisted of one "verbal warning" for a minor infraction in March

2000. (Pl. Ex. 15, Employee Counseling Report dated March 3, 2000).[1]

On January 28, 2003, an incident occurred between plaintiff and a co-worker, Ed Guaschino. Plaintiff and another co-worker, Bernice Royle, approached the computer terminal at the end of the day to "punch out" for the day. (Pl. Dep. 135-37). Guaschino stood in front of the terminal, and plaintiff and Royle asked if they could punch out. (Pl. Dep. at 137). He refused to move and plaintiff assumed he was kidding. (Pl. Dep. at 137). Plaintiff reached over Gauschino to punch out, and he "pushed [Plaintiff] and started yelling and screaming 'I fucking said, "No." You're nothing but a goddamn bitch, and you're not using this fucking terminal.'" (Pl. Ex. 1, Royle Dep. at 32). Guaschino then started spitting at plaintiff (Royle Dep. at 32) and physically shoved her with a "body slam" that knocked plaintiff backwards. (Pl. Dep. at 137). Gauschino continued to yell and scream, calling plaintiff a "fucking bitch" fifteen to thirty times (Royle Dep. at 32-33; Pl. Dep. at 266).

Plaintiff became upset and was shaking. (Royle Dep. at 35). She felt disgusted, embarrassed and helpless. (Pl. Dep. at 133-34, 138, 139). Plaintiff never made or attempted to make physical contact with Guaschino. (Royle Dep. at 36-37; Pl. Dep. 139). Although, she did call him an asshole after being spit upon, body slammed and repeatedly called a fucking bitch. (Pl. Dep. at 137, 201-02).

With a feeling of helplessness, plaintiff retreated to the store's break room. (Pl. Dep. at 134). When she finally came out of the room, Guaschino spotted her and started screaming "Fucking bitch, fucking bitch!" repeatedly. (Pl. Dep. at 135). Plaintiff proceeded to the customer service desk and attempted to reach the manager on duty. (Pl. Dep. 135, 143). Plaintiff was told that Gauschino was peering around a

---

[1] The minor infraction consisted of accusing a customer of stealing. (Pl. Ex. 15).

corner at her, so she left the store. (Pl. Dep. at 135).

The Scranton store manager, James Sowards, learned about the incident by telephone on January 28, 2003. (Sowards Dep., Pl. Ex. 9 at 92-94). At the time, he was attending a Managers Meeting with Defendant's Area Human Resources Manager, John Malone. He immediately informed Malone of the incident. (Sowards Dep. at 100). On January 28 or 29, 2003, Assistant Store Manager Jack Stockdale requested that plaintiff prepare a written report of the incident. (Stockdale Dep. Pl. Ex. 3 at 112-16).

Plaintiff spoke with Sowards regarding the incident on January 30, 2003. Plaintiff told him what had occurred. (Pl. Dep. at 151-154). Sowards excused Gauschino's behavior by explaining that he, Gauschino, was from New Jersey and that people from there have an attitude that they can say or do anything in the workplace. (Pl. Dep. at 153). Plaintiff was "amazed" by this response and felt as if she was being "brushed off." (Pl. Dep. at 155). Sowards also met with Gauschino on that same day, but for no more than two minutes. (Sowards Dep. at 118). Gauschino admitted calling plaintiff a fucking bitch and that he had made physical contact with the plaintiff. (Sowards Dep. at 112-13). Store management made no effort to interview the only other store employee who witnessed the incident, Bernice Royle. (Royle Dep. 40-41).

Sowards and Malone agreed to issue "final warnings" to both plaintiff and Guaschino instead of terminating their employment. (Sowards Dep. at 124). William Reppert, the Defendant's District Manager, agreed with the decision. (Sowards Dep. at 127-28). Sowards informed Gauschino and plaintiff of his decision at a January 31, 2003 meeting. (Sowards Dep. at 133). He explained to both employees that they were not being discharged. (Sowards Dep. at 134). Plaintiff was informed at the meeting that the decision not to fire her was final. (Pl. Dep. at 274). Gayle Cooney, who oversaw the store's human

3

resources functions, understood that the decision not to fire the plaintiff was final and no "follow-up" activity was planned. (Cooney Dep., Pl. Ex. 13 at 42-43). Plaintiff was stunned that she was to receive the same punishment as Gauschino. (Pl. Dep. at 160).

Unsatisfied with the decision, plaintiff tried to contact others in the defendant's human resource office but outside of the Scranton store. On February 4, 2003, she spoke with defendant's area human resources manager, John Malone. She told Malone that she felt as if she had been sexually harassed. (Pl. Dep. at 283, 286). Malone told plaintiff to send a written complaint to him and that her allegations would be investigated. (Pl. Dep. at 278-80; 285-86). Malone's standard practice is to immediately contact the store manager upon receiving such a complaint, therefore he telephoned Sowards after speaking with Plaintiff. (Malone Dep., Pl. Ex. 10, at 55-56). On February 4, 2003, Malone received plaintiff's written report and a written report from Gauschino. (Malone Dep. II, Pl. Ex. 11 at 21-22, 40-42). Malone opined that plaintiff's employment should not be terminated but that Gauschino's employment should be terminated. (Malone Dep. II at 35-36).

On February 6, 2003 during a meeting of plaintiff, Sowards, Stockdale and Cooney, plaintiff's employment was terminated. (Sowards Dep. at 167-171). Sowards spoke to Cooney prior to the meeting and informed her that plaintiff had contacted the human resource hotline and that the matter had "gone outside the store." (Cooney Dep. at 50, 55-56). During this meeting, Sowards gave plaintiff an "Employee Performance Report" that reads as follows: "The incident that occurred on 1/28/03 has now went to the regional HR manager, setting aside the original performance report. The incident is now classified as a class A violation resulting in termination of employee." (Pl. Ex. 25). Sowards informed plaintiff at the conclusion of the meeting that "this is your own fault, you shouldn't have taken it out of the store." (Pl. Dep. at 281;

4

Sowards Dep. at 168).

The instant employment discrimination lawsuit followed. The complaint is comprised of the following four counts: Count I, Title VII, Discrimination; Count II, Title VII, Retaliation, Count III, Pennsylvania Human Relations Act, Discrimination; and Count IV, Pennsylvania Human Relations Act, Retaliation. At the close of discovery, defendant moved for summary judgment, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. for unlawful employment discrimination, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898

F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

In analyzing summary judgment motions in cases involving employment discrimination, a burden-shifting analysis is utilized which was set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff must establish unlawful discrimination. The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for terminating her. Once the employer has offered a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the proffered reason was merely pretextual. Geraci v. Moody-Tottrup, Int'l Inc., 82 F.3d 578, 580 (3rd Cir. 1996) (citing McDonnell Douglas, supra and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981)).

**Discussion**

We will first address the defendant's two procedural motions. Defendant seeks to strike the plaintiff's counterstatement of material facts for being in violation of the Local Rules. We find no merit to the motion. The manner in which the plaintiff replied to the defendant's statement of material facts was

appropriate and helpful to the court in citing relevant portions of the record. We find no need to allow the defendant to respond to the plaintiff's counterstatement of the material facts as we have the facts from both parties, and that is sufficient for our analysis.

Next, defendant moves to strike affidavits submitted by the plaintiff of certain witnesses and portions of the deposition of Bernice Royle. We will deny this motion as moot as we need not refer to any of these affidavits or the portions of Royle's deposition of which the defendant complains in ruling upon the summary judgment motion.

## II. Sexual Harassment

Both parties have briefed this case as if it contains a hostile work environment/sexual harassment claim. A review of the complaint reveals no such claim. However, we will address the issue as it is mentioned by all the parties.[2]

Title VII provides that "[i]t shall be unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, **sex**, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added).[3] In order to establish a sexual harassment/hostile work environment claim, a plaintiff must establish the following:

---

[2] The closest the complaint comes mentioning such a claim are Counts I and III, which allege that the defendant terminated plaintiff's employment based upon her gender. See Compl. (Doc. 1) at para. 23-27 and para. 34 - 35. We shall assume, without deciding, that this claim is broad enough to encompass the harassment issues briefed by the parties.

[3] Pennsylvania courts generally interpret the Pennsylvania Human Relations Act ("PHRA") in accord with Title VII. Kelly v. Drexel Univ., 904 F.3d 102, 105 (3d Cir. 1996). Consequently, our analysis of plaintiff's counterpart Title VII claims applies with equal force to her PHRA claims.

> (1) the employee suffered intentional discrimination because of his or her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) respondeat superior liability existed.

Knabe v. Boury Corp., 114 F.3d 407, 410 (3d Cir. 1997).

Defendant claims that plaintiff cannot demonstrate elements 1, 2 or 5. We agree with the defendant and shall address these elements separately.

### 1. Intentional discrimination because of sex

The first factor that defendant asserts the plaintiff cannot meet is that she suffered from intentional discrimination because of her sex. In order to satisfy this requirement, the plaintiff must demonstrate that sex was a substantial factor in the alleged harassment and that if she were a male, she would not have been treated in the same manner. Andrews v. City of Philadelphia, 895 F.2d 1469, 1485 (3d Cir. 1990).

Defendant asserts that plaintiff has produced no evidence that Guaschino's actions against her were motivated because of her gender. Plaintiff asserts that the use of the terms "Goddamn bitch" and "fucking bitch" are sufficient to evince gender based animus. We are unconvinced by plaintiff's argument.

Merely, because the word "bitch" is used does not automatically turn a worksite disagreement into an episode of sexual harassment. See, e.g., Reyes v. McDonald Pontiac GMC Truck, Inc., 997 F. Supp. 614, 616 (D. N.J. 1998) ("Name calling and loud arguments do not constitute a sexual harassment claim. The fact that [plaintiff's co-worker] referred to plaintiff on two occasions as a "bitch" or "Miss F****** Queen Bee" does not show that she was discriminated against because of her sex. . . . Sometimes words of frustration and anger are only meant in that spirit."). While it is true that Gauschino may have chosen another word if his altercation had been with a man, we must examine the facts of the case to determine whether the

8

incident occurred *because of* the plaintiff's gender. Andrews, 895 F.2d at 1485.

The United States Supreme Court has explained as follows:

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat [ion]⋯ because of ⋯ sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998) (internal quotation marks and citations omitted).

In the instant case, the record does not support a finding that plaintiff's treatment was because of her sex. In fact, according to the plaintiff, the genesis of the situation was a work-related disagreement concerning the computer terminal "punch out" machine. Evidently, the two employees had disagreed in the past regarding Gauschino's use of chewing tobacco on the job. The sole element of sexual animus is the fact that a gender specific curse word was utilized. No other evidence in the record indicates that Gauschino generally treated women poorly on the jobsite because they were women. The facts are simply insufficient to set forth a claim of sexual discrimination/harassment.

Moreover, Gauschino was not a manager or supervisor of plaintiff, he was merely a co-worker and did not perpetrate any type of discrimination against her. The record reveals merely a hostile confrontation with the use of foul language. Accordingly, plaintiff has not met the first element of her prima facie case.

**2. Pervasive and Severe**

Moreover, plaintiff has not established the second element of a prima facie case, that the offensive conduct was pervasive and regular. Knabe, 114 F.3d at 410. Plaintiff complains primarily of the one

incident with Gauschino, and contends that one instance can be sufficient to establish sexual harassment. As we have found that the plaintiff has failed to establish that the incident between her and Gauschino was based upon sex, we cannot find it sufficient to establish the severe and pervasive sexual harassment requirement.

Moreover, the two primary cases that plaintiff cites in support of her position are inapposite. The first is Crisonino v. New York City Housing Auth., 985 F. Supp. 383 (S.D.N.Y. 1997). Plaintiff cites this case to establish that a single isolated incident of harassment can create a sexually hostile work environment. The court in that case found that the case "barely survived" summary judgment where the plaintiff's supervisor referred to her as a "dumb bitch" and then pushed her and in the process touched her above the breast. Id. at 389-390. The court deemed these facts to be a "close question" but one that a jury should decide. Id. That case, however, had the added sexual element of the plaintiff being touched above her breast which made it a closer call than the present case, where only the foul language used by Gauschino had an arguably sexual overtone.

The second case relied upon by the plaintiff is Winsor v. Hinckley Dodge, Inc., 79 F.3d 996 (10th Cir. 1996). Winsor is not applicable because the court dealt with more than a single incident and one incident that the court singled out was overtly sexual where the plaintiff was pushed against the wall by a man who then placed his knee between her legs and called her a "f-ing bitch." Id. at 1000. In addition, the plaintiff in that case was subjected to a steady stream of vulgar and offensive epithets, and incidents that occurred only because she was a woman. Id.

In the filings opposing summary judgment, plaintiff makes other allegations about foul language being commonplace at the work. She does not address this issue in her brief when discussing the "severe and pervasive" element. Even if she had, however, summary judgment would nonetheless be appropriate in

favor of the defendant. To determine if harassment is severe and pervasive the totality of the circumstances must be examined, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). In the instant case, nothing extremely severe, physically threatening or humiliating is asserted with regard to the general foul language asserted to be commonplace at the jobsite. Further, she has made no claim that the foul language interfered with her work performance. Accordingly, plaintiff has not established that the alleged sexual harassment was pervasive and severe. Therefore, summary judgment is appropriate in favor of the defendant.

### 3. Respondeat Superior liability

The final element that the defendant contends plaintiff has not met is to establish respondeat superior liability. A plaintiff is precluded from recovering for sexual discrimination/harassment unless she can establish that the company knew or should have known about the alleged harassment and failed to take prompt corrective action. Bouton v. BMW of North America, 29 F.3d 105-11 (3d Cir. 1994). As plaintiff has not suffered from sexual harassment, we cannot find respondeat superior liability on behalf of the defendant.

For all the foregoing reasons, summary judgment will be granted to the defendant on the plaintiff's claims of sexual discrimination.

### III. Retaliation

The second claim raised in plaintiff's complaint is that she was retaliated against, in fact fired, for reporting her charge of sexual harassment. With regard to retaliation, Title VII states that: "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ⋯ because [the

employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a) (1994). In her retaliation claim, plaintiff contends that she made complaints about sexual harassment and was then fired for complaining.

In order to establish a prima facie case of retaliation, a plaintiff must demonstrate the following:

1) she engaged in a protected activity; 2) the defendant took adverse employment action against her; and 3) a causal link exists between the protected activity and the adverse action. Kachmar v. SunGard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997).

Defendant asserts that plaintiff cannot establish a causal link exists between the protected activity she took and the adverse employment action taken against her. We disagree.

The law provides that the "temporal proximity between the employee's protected activity and the adverse employment action . . . is an obvious method by which a plaintiff can proffer circumstantial evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." Kachmar v. SunGard Data Sys., Inc. 109 F.3d 173, 177 (3d Cir. 1997). In the instant case, the record reveals that plaintiff complained to the corporate human resources department on February 4, 2003. Very soon thereafter, on February 6, 2004, she was terminated.

The temporal proximity is not the only evidence plaintiff has supplied with regard to the causal link. For example, plaintiff was informed by the Scranton store management that the final decision had been made not to terminate her employment based upon the incident. However, after plaintiff complained to corporate human resources, and the management of the Scranton store was informed of her complaint, the management changed its decision and she was almost immediately fired. In addition, Sowards, the person who made the adverse employment decision informed plaintiff that the firing was her own fault, and that she

should not have taken her complaint out of the store. (Pl. Dep. at 281; Sowards Dep. at 168).

Defendant asserts that plaintiff has insufficient evidence to establish that its articulated reason for the dismissal is pretextual. The reason provided by the defendant is that the plaintiff committed a "Class A violation of Company policy." Evidently, the violation was calling Gauschino an "asshole" and allegedly shoving Gauschino. We find that the plaintiff has submitted sufficient evidence to establish that the defendant's articulated reason is merely pretext. This evidence is the same as reviewed above with regard to establishing a causal link.

Thus we find that plaintiff has sufficient evidence to establish her retaliation claim. Accordingly, defendant's motion for summary judgment with respect to retaliation will be denied.

**Conclusion**

We shall grant summary judgment to the defendant on the plaintiff's sexual harassment claim. Although, she was subjected to a confrontation that included vulgar, offensive language, she has not provided any evidence that the confrontation was because of her sex. Summary judgment shall be denied with regard to the retaliation claim. Plaintiff has submitted sufficient evidence to create a jury question with regard to whether she was dismissed from her employment due to her complaints of sexual harassment. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARBARA EVANS,** | : | No. 3:04cv0439 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **LOWE'S HOME CENTERS, INC.,** | : | |
| **Defendant** | : | |

## ORDER

**AND NOW**, to wit, this 26th day of September 2005, Defendant Lowe's Home Centers, Inc. motion for summary judgment (Doc. 29) is **DENIED** in part and **GRANTED** in part. Summary judgment is granted to the defendant with regard to the claims of sex discrimination, Count I and Count III of the Complaint, but denied with regard to the claims of retaliation, Counts II and IV.

The defendant's motion to strike plaintiff's counterstatement of material facts (Doc. 45) is **DENIED**. The defendant's motion to strike affidavits (Doc. 51) is **DENIED**.

           **BY THE COURT:**

           **s/ James M. Munley**
           **JUDGE JAMES M. MUNLEY**
           **United States District Court**